IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LONNIE G. BLACKBURN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )   CIV-12-2-F |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
|   Commissioner of Social Security | ) |
|    Administration, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On August 21, 2009, Plaintiff filed his application for Title II disability insurance

benefits. (TR 134-137). At that time, Plaintiff was 49 years old. Plaintiff also filed a Title XVI application seeking supplemental security income benefits. (TR 138-140). In his applications, Plaintiff alleged that he was disabled beginning August 30, 2008, due to "brucealosis"[1] pain in his back, hip, shoulder, and hand. (TR 170). He described previous work as a heat and air apprentice, janitor, driver, oilfield worker, and short order restaurant cook. (TR 171, 177-186).

The medical evidence is sparse. Between 2002 and 2006, Plaintiff was treated by Dr. Mattok for back pain which Plaintiff related to multiple motor vehicle accidents. (TR 235). Dr. Matook noted that an x-ray of Plaintiff's lumber spine showed foraminal stenosis at two levels and that he prescribed anti-inflammatory and pain medications at intermittent visits for low back pain. (TR 225, 235, 236, 237). Dr. Johnson, an orthopedic specialist, treated Plaintiff for a work-related left shoulder injury in 2007. (TR 216-228). Dr. Johnson performed a surgical repair of Plaintiff's left-sided rotator cuff injury in March 2007. (TR 219). In November 2007, Dr. Johnson released Plaintiff from further treatment and stated that Plaintiff had permanent restrictions of "restricted lifting of no more than twenty five pounds occasionally, pushing of forty six pounds and pulling of fifty four pounds." (TR 228).

Plaintiff was involuntarily hospitalized at a mental health clinic for four days after he overdosed on anti-anxiety medication. (TR 239-240). Plaintiff described multiple stress-

---

[1] "Brucellosis is an infectious disease that occurs from contact with animals carrying *Brucella* bacteria" and is treated with antibiotics. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001623/.

related circumstances, including the death of his wife and mother, in the previous year. (TR 254). At the time of his discharge, his treating mental health professional noted that Plaintiff exhibited an appropriate affect and denied suicidal thoughts. (TR 243).

In a consultative physical examination conducted in November 2009, the examiner, Dr. Martinez, noted that Plaintiff complained of progressively worsening low back pain over the previous two years with radiation into his right hip and with right foot and leg numbness. (TR 256). Plaintiff indicated the pain was aggravated by sitting and standing for long periods, bending at the waist, and trying to lift heavy objects. (TR 256). On examination, Plaintiff exhibited full muscle strength, limited range of back motion, normal heel and toe walking, normal fine tactile manipulation of objects, and limited range of hip movement due to back and right hip pain. (TR 257). Dr. Martinez noted Plaintiff used a cane and exhibited slow but steady gait with a right limp. (TR 258).

In a second consultative physical examination conducted by Dr. Chaudry in March 2011, Dr. Chaudry reported that Plaintiff complained of shoulder and lower back pain but he was not receiving medical treatment. (TR 290). Dr. Chaudry noted Plaintiff's range of motion in his shoulders was painful, that Plaintiff showed normal movement and strength in his extremities, that Plaintiff could walk unassisted but he walked with a cane, and that Plaintiff exhibited normal fine and gross finger manipulation of objects and normal grip strength. (TR 292). An x-ray of Plaintiff's lumbar spine showed degenerative changes consistent with osteoarthritis. (TR 292).

Plaintiff's applications were administratively denied. (TR 53-56). At his request, a

hearing *de novo* was conducted on February 17, 2011, before Administrative Law Judge Levine ("ALJ"). (TR 17-52). Plaintiff, who appeared with counsel, testified that he was not receiving medical treatment, that he injured his shoulder in a work-related accident, and that he had been released by his treating physician in 2007 with permanent restrictions. Plaintiff also described a previous hand injury and constant left hand pain. Plaintiff testified that he completed the eighth grade, was able to read and write, relied on friends and family for household maintenance chores, fed his horse every day, had difficulty grasping and holding onto objects, used a cane because his leg would become numb with sitting, could not lift any weight, could not stand because his right hip would "give[ ] out" and his back hurt, could sit for 10 to 15 minutes, could not lift over his head, and was fatigued and depressed every day. Plaintiff stated that he had been treated at mental health clinic in December 2008 after a suicide attempt involving an overdose of anti-anxiety medication. A vocational expert ("VE") also testified at the hearing.

Following the requisite sequential evaluation procedure, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ issued a decision denying Plaintiff's applications. (TR 9-16). The Appeals Council declined to review this decision (TR 1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner.

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings

are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. Id. In this case, Plaintiff's claim was denied at step five. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

The agency determined that Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on March 31, 2010. (TR 157, 167, 187). Consequently,

to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on March 31, 2010. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. ALJ's Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 30, 2008, and that his date last insured was March 31, 2010. (TR 12). At step two, the ALJ found that Plaintiff had severe impairments due to status post rotator cuff repair, status post bilateral hand repair, and osteoarthritis of the lumbosacral spine. (TR 12). At the third step, the ALJ found that Plaintiff's impairments were not disabling *per se* because the objective medical evidence in the record did not satisfy or medically equal one of the listed impairments deemed disabling *per se* by the agency.

At step four, the Plaintiff found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with the following restrictions. Incorporating the permanent work-related restrictions imposed upon Plaintiff by Dr. Johnson, the ALJ found that Plaintiff "can lift 25 pounds occasionally, push 46 pounds, and pull 50 pounds." (TR 13). The ALJ further found that Plaintiff "can stoop, crouch, or reach overhead only occasionally. He must have the option of using a cane when ambulating. He cannot climb ladders or scaffolding, and he cannot crawl." (TR 13-14). Relying on the VE's

testimony concerning the exertional and skill requirements of Plaintiff's past work, the ALJ found that Plaintiff's RFC for work did not preclude the performance of his previous job as a driver. Alternatively, the ALJ found at step five that there are jobs available in significant numbers in the economy which Plaintiff can perform, including the jobs of counter clerk, record clerk, and information clerk. (TR 15). In consideration of these findings, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.

IV. <u>Step Four - Past Relevant Work</u>

Plaintiff contends that the ALJ erred in finding he could perform his previous job as a driver because Plaintiff did not earn the requisite amount for this position to qualify as substantial gainful activity ("SGA"). The Commissioner responds that no error occur with respect to the ALJ's step four determination.

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the obligations of the claimant's past relevant work. <u>See</u> <u>Andrade v. Secretary of Health & Human Servs.</u>, 985 F.2d 1045, 1051 (10th Cir. 1993).

The record reflects that Plaintiff performed work as a driver for an individual, Mark Landen, for a two-year period between June 2001 and June 2003. (TR 171, 181). Although on one report to the agency Plaintiff described this job as part-time work performed 20 hours

per week[2] (TR 171), he also stated that the job was performed on a 40-hour-per-week basis. (TR 181). In performing this job, Plaintiff stated that he "drove a blind man to all his appointments" and assisted the individual by carrying vending machine items to various vending machine sites, helping the individual count money retrieved from the vending machines, taking the money to a bank, and carrying sacks of coins. (TR 181).

"Past relevant work is work that [the claimant] ha[s] done within the past 15 years, that was [SGA], and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The agency has established a presumptive earning level for a job to qualify as SGA. See 20 C.F.R. §§ 404.1574(b), 416.974(b). Part-time work that was SGA can qualify as past relevant work. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at * 2 n. 2.

For the years 2001, 2002, and 2003, a job that earned $740, $780, and $800 a month, respectively, constituted SGA. 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii)(requiring that a job beginning January 1, 2001, is SGA if it averages more than the larger of $700 per month or "[a]n amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998"); http://www.ssa.gov/aoct/cola/sga.html.

---

[2] In his brief, the Commissioner mistakenly asserts that Plaintiff worked 25 hours per week in this driver's position. Commissioner's Brief, at 4. However, Plaintiff stated that he performed this position 4 hours per day and 5 days per week, or 20 hours per week. (TR 171).

Assuming that Plaintiff performed the driver position for only 20 hours per week, his earnings for these three years were presumptively not high enough to be SGA. Plaintiff's earnings record reflects that he earned only $4,242.25 in 2001, $1,008.00 in 2002, and $1,510.00 in 2003. (TR 165). As such, his earnings for these years fell below the threshold monthly levels as determined under 20 C.F.R. §§ 404.1574(b)(2)(ii) and 416.974(b)(2)(ii).

The pertinent regulations provide that the Commissioner "will generally consider other information in addition to [a claimant's] earnings if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity." 20 C.F.R. §404.1574(b)(3)(ii) and 416.974(b)(3)(ii). However, the ALJ did not question Plaintiff concerning his past relevant work.

The Commissioner argues in a post-hoc rationale that the ALJ could reasonably infer that Plaintiff's salary from Mr. Landen was not reported and that his earnings exceeded the threshold monthly levels based on his statements concerning the rate of pay and hourly requirements for this position. However, the Commissioner mistakenly asserts (1) that Plaintiff reported he worked 25 hours per week for Mr. Landen, which he did not, and (2) that Plaintiff's earnings record did not indicate he received earnings from Mr. Landen, which it does. (See TR 162). The Commissioner's post-hoc rationale is unavailing.

Based on Plaintiff's earnings record and the agency's wage requirements for determining SGA for the relevant years, the ALJ erred in finding that Plaintiff's job as a part-time driver constituted SGA. The ALJ's failure to apply the correct legal standards normally requires reversal of the Commissioner's decision and a remand for further administrative

proceedings. However, in this case, the ALJ proceeded to the fifth step of the sequential evaluation process. Thus, it is necessary to determine whether the ALJ conducted the proper legal analysis at the fifth step and whether substantial evidence supports the ALJ's step five determination.

V. Step Five - Ability to Perform Other Work Existing in the Economy

Plaintiff alleges errors in the ALJ's alternative step five determination. Plaintiff contends that the ALJ failed to request information from the VE concerning the job "coding" set out in the U.S. Department of Labor's Dictionary of Occupational Titles (4th ed. 1991)("DOT") with respect to the jobs identified by the VE. Plaintiff further contends that the VE's testimony conflicts with the DOT because the descriptions in the DOT require "manual dexterity" abilities that are beyond his assessed RFC. Plaintiff's Opening Brief, at 9.

The Commissioner admits that one of the jobs identified by the VE, record clerk, is not classified in the DOT as light and unskilled and therefore this job does not fall within the Plaintiff's assessed RFC. The Commissioner contends that Plaintiff's RFC permits him to perform the remaining two jobs identified by the VE and that no conflict exists between the VE's testimony and the DOT as to the requirements for performing these two jobs.

An ALJ must inquire about and resolve any conflicts between a VE's testimony regarding available jobs and the DOT's description of those jobs. Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009); Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000). At the hearing, the VE was asked to identify any jobs that would be available for an

individual with Plaintiff's vocational characteristics (48 to 51 years of age with a partial ninth grade education) and who could perform light work with lifting limitations of 25 pounds occasionally, 46 pounds pushing, and 50 pounds pulling, who could occasionally stoop and crouch but could not use ladders, scaffolding, or crawl, who would use a cane, who could perform occasional overhead reaching, who could perform hand gripping tasks with a "30 percent reduction," and who needed a job with a "sit/stand option." (TR 41-45).

In response to this hypothetical, the VE testified that the individual could perform the light, unskilled jobs of counter clerk, record clerk, and information clerk. (TR 45). The ALJ did not specifically inquire as to whether any conflict existed between the VE's testimony concerning job requirements for these jobs and the DOT. However, Plaintiff's attorney questioned the VE about the reaching and dexterity requirements for the jobs the VE identified, and the VE explained that these three jobs were available because they were "designated" as requiring only "occasional, meaning it only occurred up to a third of the workday," reaching, fingering, and handling. (TR 46). Plaintiff did not question the VE further, and the ALJ found in his decision that the VE's testimony was consistent with the information contained in the DOT. (TR 15).

Plaintiff points to a general description in the DOT concerning the requirements for clerical-type jobs, but Plaintiff does not point to a specific conflict between the VE's testimony and the DOT's description for each of the three jobs identified by the VE. Nevertheless, a review of the DOT's description of two of the three jobs identified by the VE reveals conflicts between the VE's testimony and the DOT that should have been explored

at the hearing.

The DOT describes a record clerk position at 206.387-022 as requiring reaching, handling, and fingering for "1/3 to 2/3 of the time." 1991 WL 671736. The Commissioner states in his responsive brief that he could not locate in the DOT a light and unskilled record clerk position. However, the position described above in the DOT requires light exertional ability and level three reasoning ability. The position also requires reaching and dexterity abilities that conflict with the VE's testimony. The ALJ erred by failing to inquire at the hearing concerning the conflict between the DOT and the VE's testimony concerning the reaching and dexterity requirements for this position.

The DOT describes an information clerk position at 237.367-018 as requiring reaching and handling "from 1/3 to 2/3 of the time" and fingering "up to 1/3 of the time." 1991 WL 672187. The ALJ erred by failing to inquire at the hearing concerning the conflict between the DOT and the VE's testimony concerning the reaching and handling requirements of this job. The Commissioner's attempt to present a post-hoc rationale for the ALJ's error is unavailing. It was critical for the ALJ to explore the discrepancy at the hearing and error not to have done so.

The DOT describes a counter clerk position at 249.366-010 as requiring reaching, handling, and fingering "up to 1/3 of the time." 1991 WL 672323. Because the VE's testimony did not conflict with the job requirements set forth in the DOT for the job of counter clerk identified by the VE, any error in the ALJ's failure to question the VE as to conflicts with the DOT concerning this position was harmless. See Poppa, 569 F.3d at 1174

("Because there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless."). The VE testified that the counter clerk position totals 55,800 in the national economy. (TR 45). The ALJ, however, erroneously found that the counter clerk position totals 550,000 in the national economy. The ALJ's error in this respect is harmless (and probably was merely a typographical error) because the VE's testimony concerning the availability of this job provides substantial evidence to support the Commissioner's decision. Therefore, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___December 26th___, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ____6th____ day of ____December____, 2012.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE